IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ADAM N. VALDEZ,

                   Petitioner,

        vs.                           Case No. 06-3103-JTM

DAVID MCKUNE, *et. al.*,

               Respondents.

MEMORANDUM AND ORDER

The present matter arises on petitioner's motion for habeas corpus relief pursuant to 28

U.S.C. § 2254.  For the following reasons, the court denies petitioner's appeal.

*I.  Procedural History*:

Petitioner is currently in custody at the Lansing Correctional Facility in Lansing, Kansas.

On February 22, 1996, Petitioner was charged in the District Court of Finney County, Kansas

with one count of first degree murder in violation of K.S.A. 21-3401(a), one count of aggravated

kidnapping in violation of K.S.A. 21-3421, one count of conspiracy to commit first degree

murder in violation of K.S.A. 21-3302, one count of conspiracy to commit aggravated

kidnapping in violation of K.S.A. 21-3302, one count of aggravated robbery in violation of

K.S.A. 21-3427, and one count of aggravated battery in violation of K.S.A. 21-3414(a)(1)(A).

After a preliminary hearing was held on June 11, 996, petitioner was certified to be

prosecuted as an adult.  Thereafter, on November 22, 1996, petitioner was convicted by a jury in

the District Court of Finney County on all counts.  The district court sentenced petitioner to a

term of life imprisonment with no possibility of parole for 40 years for the count of first degree

murder, plus a consecutive term of 189 months imprisonment for the other counts.  Petitioner

appealed his sentence to the Supreme Court of Kansas.

The Supreme Court of Kansas affirmed petitioner's conviction in *State v. Valdez*, 266

Kan. 774 (1999).

Petitioner initially filed a petition for habeas corpus pursuant to K.S.A. 60-1507 in the

District Court of Finney County, Kansas, alleging ineffective assistance of counsel and that the

amended information was defective.  The district court found the motion to be defective and

dismissed the action.  Following the dismissal, petitioner filed a motion for reconsideration, after

correcting his motion and adding a supporting memorandum of law.  The district court denied

the motion for reconsideration, stating that petitioner did not specify any of the enumerated

grounds for relief.  Petitioner appealed.

The Kansas Court of Appeals reversed and remanded with instructions to consider

petitioner's K.S.A. 60-1507 motion, as supplemented with his memorandum of law.  The Kansas

Supreme Court denied review.  Petitioner filed the present action for federal habeas relief

pursuant to 28 U.S.C. § 2254.

*II.  Factual Background*:

The following facts, as determined by the Kansas Supreme Court in petitioner's direct

appeal, *State v. Valdez*, 266 Kan. 774 (1999), are not in dispute, and absent clear and convincing

evidence to the contrary, are presumed to be correct.  28 U.S.C. § 2254(e)(1).  The factual

findings are as follows:

> On February 4, 1996, a group of young people met to party at a
> residence in Garden City, Kansas.   The group included several

2

members of a local gang, the Young Crowd ("Y.C.") and others who were not gang members. [Petitioner], age 17, was a Y.C. member. The victim, Juan Ayon, age 33, was not a Y.C. gang member.

During the party, an argument developed between a Y.C. member and Ayon. When the argument became physical, the Y.C. members converged on Ayon and started beating him. The fray moved outside to the front porch. The conflict ended with Ayon laying with his head hanging over the edge of the front porch bleeding profusely from the face and head and unable to defend himself while the Y.C. members hit and kicked him.

The young man who resided at the house stopped the beating by bringing his pit bulldog to the porch. The crowd went into the residence. Several individuals, including Richard Garcia, the leader of the Y.C.'s, Jose Avalos, and [petitioner] met in the bathroom for a conversation concerning the victim, Ayon. Richard Garcia ordered [petitioner] and Avalos to "go take care of him."

[Petitioner], Avalos, and Ayon left the party in Ayon's car at about 4:30 a.m. on February 4, 1996. The injured Ayon was laying on the back seat of his car.

At 5:30 a.m. on February 4, 1996, Ayon's abandoned car was found by police on Taylor Street. The car had been vandalized and was soiled with copious amounts of blood. Shoe impressions in the snow around the car and in the vicinity indicated that two individuals exited the car, wandered through the neighborhood, and were picked up by another car a short distance from the abandoned car. Later that day, Ayon's body was found in an isolated field outside Garden City. Ayon's body appeared to have been run over several times by a car.

The police investigation uncovered circumstantial and forensic evidence that led to the arrest and indictment of [petitioner], Avalos, and others. The statements of Kamber Snyder, a guest at the party on Chesterfield Street, and Jose Avalos were of primary importance in narrowing the focus of the police investigation to Jose Avalos and [petitioner]. Kamber Snyder told police that a couple days after the party, she confronted Avalos and [petitioner] regarding their involvement in the killing of Juan Ayon. Both admitted to Kamber Snyder that they had killed Juan Ayon.

In an interview with police on February 20, 1996, Jose Avalos admitted that he and [petitioner] had killed Ayon. Avalos stated that

following the fight on the front porch, Avalos, [petitioner], Richard Garcia, the leader of the Y.C. gang, and others, met in the bathroom. [Petitioner] told Richard Garcia that they had to take care of Ayon. Garcia replied, "It's up to you, you take care of him then." Avalos, who was told to accompany [petitioner], stated that he did not want to go with [petitioner]. Richard Garcia informed Avalos that if he did not go, he would be "jumped out" of the gang and would not deserve to live.

Avalos told police that [petitioner] drove Ayon's car to a sandpit area where [petitioner] pulled Ayon from the car. When [petitioner] returned to the car, he drove in circles, running over Ayon numerous times. Avalos stated he felt the car going over the body of Ayon and heard the sound of the car hitting tall weeds as it drove over the terrain. [Petitioner] then drove to Taylor Street where he abandoned the car. [Petitioner] climbed on the hood and kicked in the windshield. Because [petitioner's] blue Dickies coat, black jeans, and black Nike tennis shoes were soiled with blood, they stopped at [petitioner's] home so [petitioner] could clean up.

Prior to [petitioner's] trial, Jose Avalos pled guilty to felony murder. As agreed, the State dropped several charges against Avalos, including premeditated murder.

After his arrest, [petitioner] was certified to stand trial as an adult. The case was tried to a jury. [Petitioner] was found guilty of first-degree premeditated murder, aggravated kidnapping, conspiracy to commit murder in the first degree, conspiracy to commit aggravated kidnapping, aggravated robbery, and aggravated battery. Prior to [petitioner's] sentencing, the State moved for imposition of the mandatory 40-year sentence. The trial judge granted the motion. [Petitioner] was sentenced to life imprisonment (hard 40 sentence) for first-degree premeditated murder, 97 months for aggravated kidnapping (consecutive to murder sentence), 73 months for conspiracy to commit aggravated murder (concurrent with kidnapping sentence), 49 months for conspiracy to commit aggravated kidnapping (concurrent with conspiracy to commit murder sentence), 49 months for aggravated robbery (consecutive to previous sentences), and 43 months for aggravated battery (consecutive to previous sentences). [Petitioner] appealed directly to the Supreme Court pursuant to K.S.A. 22-3601(b)(1).

*Valdez*, 266 Kan. at 776-78.

III.  *Standard of Review*:

Petitioner's appeal is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because he filed his petition for federal habeas relief after the enactment of the AEDPA.  *Hooks v. Ward*, 184 F.3d 1206, 1213 (10th Cir. 1999).

Habeas relief is available only if petitioner can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or an "unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(2).  Absent clear and convincing evidence to the contrary, the court must presume that the state courts' factual findings are correct.  28 U.S.C. § 2254(e)(1).  *See Miller-El v. Cockrell*, 537 U.S. 322 (2003).

A state court decision will be "contrary to" clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court decision will be an "unreasonable application of" clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Williams*, 529 U.S. at 407-408.  Therefore, a federal court reviewing a petition for habeas relief should inquire whether the state court's application of clearly established federal law was objectively unreasonable.  *Id*. at 409.

IV.  *Conclusions of Law*:

Petitioner raises the following issues on appeal.

A.  *Whether the district court erred in certifying petitioner as an adult?*

Petitioner first argues that the district court erred in certifying petitioner as an adult because the state did not present any evidence of an adjudication of any juvenile offenses committed by the petitioner.  Petitioner also cites that the court erred by ruling that petitioner should be certified as an adult due to his lack of respect for authority, lack of school attendance, and lack of a stable home life because evidence was not presented by the state to support this conclusion.

However, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether the conviction violated the Constitution, laws, or treaties of the United States." *Id.*  (citing 28 U.S.C. § 2441).  Petitioner does not allege a federal violation with his first claim.  Therefore, the court will not review the petitioner's first claim regarding whether the district court erred in certifying petitioner as an adult.

B.  *Whether the district court erred in denying petitioner's motions to acquit as to all charges contained in the amended information?*

Petitioner's second allegation is that the district court erred as a matter of law in denying petitioner's motions to acquit as to all charges contained in the amended information because the state did not prove its case on the charge of aggravated robbery and aggravated kidnapping.

When reviewing a claim of insufficient evidence to support a conviction in a federal habeas proceeding, "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979); *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003).  When conflicting testimony is present, a reviewing court must also assume "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at 326.

Specifically, petitioner argues that the state never presented any evidence that the victim was kidnapped or confined.  Instead, petitioner alleges that he, a friend, and the victim left the party in the victim's vehicle.  However, he argues, there is no evidence to suggest that the victim tried to leave the vehicle or that the victim was restrained from leaving the vehicle.  Additionally, for the aggravated robbery charge, the petitioner alleges that the state did not prove that the car, some papers, and a blue bandana were taken from the victim.  Petitioner notes that the victim gave the keys to his vehicle to his friend, Avalos and therefore, the vehicle was not stolen.

Under K.S.A. 31-3421, aggravated kidnapping is defined as the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person to facilitate bodily injury on the person and bodily harm is actually inflicted upon the kidnapped person.  The testimony demonstrates that when the petitioner and Avalos left the party with Ayon, the victim was either asleep or unconscious.  R. XI, pg. 124.  Bill Dianda testified that he heard Richard Garcia tell petitioner and Avalos to "go take care of [Ayon]."  R. XII, pp. 45-46.  Thereafter, Ayon was taken to a remote spot in the country where he was run over.  The

7

testimony shows that Ayon was taken to the remote location for the specific purpose of inflicting bodily injury to him, which in fact occurred.  The court finds that a rational fact-finder could conclude beyond a reasonable doubt that petitioner met the requirements of the aggravated kidnapping charge.

Additionally, the statute for aggravated robbery, K.S.A. 21-3427, requires the taking from the person or presence of another by force or by threat of bodily harm committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such taking.  According to testimony by Avalos, Ayon was taken to the country, removed from his vehicle by the petitioner, and then run over multiple times which ultimately resulted in his death.  R. XI, pp. 124-28.  Thereafter, the two took Ayon's vehicle.  *Id.* Therefore,  due to the testimony, it appears that petitioner and Avalos forcefully inflicted bodily harm upon Ayon and took his property.  When viewed in the light most favorable to the prosecution, a rational fact-finder could conclude beyond a reasonable doubt that petitioner committed the crime of aggravated robbery.  The Kansas Supreme Court's determination that the evidence was sufficient for a jury to find petitioner guilty of aggravated robbery and aggravated kidnapping beyond a reasonable doubt was sufficient and neither contrary to, nor an unreasonable application of United States Supreme Court precedent.  *Valdez*, 266 Kan. At 784-87.

*C.  Whether the district court erred in admitting the results of the DNA testing?*

Petitioner next argues that the district court erred in admitting the results of the DNA testing due to a lack of a chain of custody and that the state did not establish the necessary qualifications for the state's expert witness, Julie Kempton, to testify.

In federal habeas proceedings, courts do not question a state court's evidentiary rulings unless the petitioner can show, as a whole, the court's rulings rendered his trial fundamentally unfair. *Hatch v. State of Okl.*, 58 F.3d 1447, 1468 (10th Cir. 1995). However, petitioner has not demonstrated that the state court's admission of the DNA testing and its expert witness rendered his trial fundamentally unfair. First, the state's expert testified about the education and training she received, as well as the fact that she had testified in other cases. After the state's request that Kempton be qualified as an expert witness, the defense did not object. R. XII, pg. 15. The court finds that the court's ruling finding the state's expert witness qualified to testify did not render petitioner's trial fundamentally unfair.

Furthermore, in order to establish a chain of custody, Kempton testified that she received the samples for testing via Federal Express from Mary Koch. R. XII, pg. 18. Ms. Koch also testified that she took swabs and cuttings from the shoelaces and then submitted these items to Cellmark Diagnostics. R. IX, pp. 91-93. The state court's finding that the state established a chain of custody did not render petitioner's trial fundamentally unfair.

## D.  Whether the district court erred in ordering a witness to testify at the trial?

Next, petitioner alleges that the district court erred in ordering a witness, Jose Avalos, to testify at the trial when the witness invoked his Fifth Amendment right not to testify.

Petitioner's claim is without merit because the petitioner lacks standing. "The privilege against self incrimination is solely for the benefit of the witness and is purely a personal privilege of the witness, not for the protection of other parties." *U.S. V. Skolek*, 474 F.2d 582, 584 (10th Cir. 1973) (citing *Rogers v. United States*, 340 U.S. 367 (1951)). "Where the witness is not the party, the party may not claim the privilege nor take advantage of an error of the court

in overruling it.  The party, as contrasted to the witness, simply lacks standing." *Id*.  Here, the witness, Avalos, pled guilty and therefore, was compelled to testify.  Petitioner cannot assert Avalos' right against self-incrimination in order for petitioner's own benefit.  The right against self-incrimination is personal to the witness, Avalos, not the petitioner.

## E.  Whether the district court erred in allowing evidence of petitioner's gang affiliation?

Petitioner also argues that the district court erred by allowing evidence of petitioner's gang affiliation to be presented to the jury.

To succeed on a claim of erroneous admission of evidence, petitioner must demonstrate that the alleged error rendered his trial fundamentally unfair.  *Hatch v. State of Okl.*, 58 F.3d 1447, 1468 (10th Cir. 1995).  Evidence of a gang affiliation is admissible when relevant to a material issue in the case.  *U.S. v. Abel*, 469 U.S. 45, 49 (1984).  *See also U.S. V. Sloan*, 65 F.3d 149, 151 (10th Cir. 1995) (holding that gang membership evidence was admissible where relevant and material to the crimes charged because it demonstrated the basis of the relationship between the parties).

In the present case, the Kansas Supreme Court found that petitioner's gang affiliation was evidence that explained an otherwise inexplicable act and was directly related to the killing of Ayon.  *Valdez*, 266 Kan. At 797.  The court agrees.  Evidence of the gang affiliation was relevant to material issues involved in the case, namely the killing of Ayon, and therefore, petitioner has not established that the admission resulted in an unfair trial or that the state court's determination was contrary to, or an unreasonable application of firmly established United States Supreme Court precedent.

*F.  Whether the district court erred in not sustaining petitioner's objections to the remarks of the prosecutors made during his closing arguments to the jury?*

Petitioner also argues that the prosecutor committed misconduct in his closing argument by the following statements: "we have [petitioner] telling us," which references how many times Ayon was run over.  Petitioner believes that this improperly and prejudicially emphasized the fact that petitioner did not testify at trial.  Additionally, petitioner alleges that the prosecution called Carlos Valencia a gangster, and further referred to "all these people," which petitioner claims was a reference to him and his friends.  Petitioner notes that this statement prejudiced petitioner because it referred to him as a "gangster."

The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  The appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  *Id*. (quoting *Donnelly*, 416 U.S. at 642).

The prosecutor immediately apologized for the misstatements and corrected himself upon the objection by the defense counsel concerning the reference to petitioner's statements.  R. XIV, pg. 191.  Further, Detective Relph identified petitioner and others as members of the Y.C. gang.  R. XII, pp. 40-43.  Avalos also testified that Garcia told him if he did not go along with petitioner he would get jumped out of the gang.  R. XI, pp. 121-22.  These statements did not rise to the level of so infecting petitioner's trial that it made the resulting conviction a denial of petitioner's due process rights.

G.  *Whether the district court committed cumulative error?*

Petitioner also contends that the district court committed cumulative error during petitioner's trial and that the error constitutes reversible error.  Specifically, petitioner alleges that the above-referenced errors amount to cumulative error.  Additionally, he argues that the court committed cumulative error when it did not sustain petitioner's objections to the testimony of officers Utz, Diehl, and Andrews and the testimony of Cassandra Warren and Willie Relph. Petitioner also alleges that the court denied him his right to present evidence of another suspect in the crime, specifically, David Ramirez's involvement in the case.  Finally, petitioner states that he did not confess to the crime, which resulted in the state using testimony of others to convict petitioner in this case.

Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors.  *Moore v. Reynolds*, 153 F.3d 1086, 1115 (1998). The court evaluates whether cumulative errors were harmless by determining whether a criminal defendant's substantial rights were affected.  *Id*.

After a review of the record, the court finds that petitioner's allegations do not amount to cumulative error because his substantial rights were not affected by the additional allegations.

H.  *Whether the district court erred in imposing the "Hard 40" sentence?*

Petitioner also argues that the court erred in imposing the Hard 40 sentence because the state did not meet its burden of proof that Ayon's murder was committed by petitioner and that it was committed in an especially heinous, atrocious, or cruel manner.  Additionally, petitioner alleges that the court did not consider petitioner's age and lack of criminal history, in violation of his due process rights.

The court has already addressed whether the state met its burden in proving that petitioner killed Ayon. With respect to the aggravating factors of "heinous, atrocious, and cruel," these factors are matters of state law and do not affect constitutional rights. However, the misapplication of state law results in a due process violation only if the sentence is arbitrary and capricious. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992). In order to demonstrate the elements of "arbitrary and capricious," the petitioner must demonstrate that no reasonable sentencer could have found aggravating factors, *i.e.*, that the crime was especially heinous, which justifies the sentence length. *Lewis v. Jeffers*, 487 U.S. 764, 783 (1990). "A state court's especially heinous finding, insofar as it is a matter of state law, is reviewable by the federal courts only under the rational 'factfinder' rule of *Jackson v. Virginia*." *Id.* The relevant question under *Jackson* is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Kansas law states that "[a] crime is committed in an especially heinous, atrocious, or cruel manner when the perpetrator inflicts serious mental anguish or serious physical abuse before the victim's death. Mental anguish includes a victim's uncertainty as to [his] or [her] ultimate fate." *State v. Sanders*, 272 Kan. 445 (2001) (quoting *State v. Willis*, 254 Kan. 119, Syl. ¶ 4 (1993)).

The State presented evidence that petitioner helped Ayon from the vehicle and then ran him over multiple times. This evidence demonstrates that the victim was still alive when he was run over by the petitioner. R XI, pp. 124-28. Additionally, Dr. Melin testified that Ayon's death likely occurred within a few minutes of sustaining the injuries from the vehicle. R. VIII, pp.

142-43.  Dr. Bennet, the defendant's witness, testified that Ayon's death occurred shortly after being run over by an automobile.  R. XIV, pg. 71.  This evidence shows that Ayon was alive before petitioner ran him over and thus suffered both serious mental anguish and physical abuse before his death.  Therefore, the court's determination that the murder was committed in an especially heinous, atrocious, and cruel manner was reasonable in light of the evidence.

Although petitioner argues that the court did not consider mitigating factors such as his young age and lack of prior criminal activity, the trial court noted that it considered petitioner's age and lack of criminal record and found that the "aggravating circumstances are not outweighed by the mitigating circumstances of age and prior criminal activity."  R. XVIII, pp. 103-04.  Accordingly, the court denies petitioner's petition on this issue.

*I.  Whether petitioner received ineffective assistance of counsel?*

For petitioner to establish a claim of ineffective assistance of counsel, he must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness, *i.e.*, counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced his case, *i.e.*, that but for his counsel's errors, the proceeding would have yielded a different result.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  "A defendant does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment decides not to present those points."  *Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir. 1991).

*1. Trial Counsel's failure to object to jury instructions:*

Petitioner first claims ineffective assistance of counsel because his defense counsel failed to object to the trial court's jury instructions.  Petitioner specifically objects to the use of Pattern Instruction for Kansas ("PIK"), Criminal, 3d ed., 52.02, because it did not correctly convey the concept of reasonable doubt when examined as a whole.

The Kansas Supreme Court has upheld PIK Crim. 3d ed., 52.02 as properly advising the jury of the presumption of innocence, burden of proof, and reasonable doubt.  *State v. Clark*, 261 Kan. 460 (1997).  Petitioner has not shown that his counsel's failure to object fell below an objective standard of reasonableness.  Additionally, petitioner has not demonstrated that but for his counsel's failure to object, the outcome would have been different, *i.e.*, that the court would have sustained the objection rendering a different result.

*2. Appellate Counsel's failure to raise and argue on appeal petitioner's Fifth and Fourteenth Amendment violation:*

Petitioner also claims that his appellate counsel was ineffective for failing to argue and brief that his right to a fair trial was violated by the trial court which compelled Avalos to testify in violation of Avalos' Fifth Amendment privilege.

Petitioner's counsel did brief and argue that the trial court erred in ordering Avalos to testify after Avalos invoked his Fifth Amendment right.  *See* Case No. 78,786, Appellant's Brief, pp. 53-55.  However, the Kansas Supreme Court was not persuaded.  *See Valdez v. State*, 266 Kan. 774, 794-95 (1999).

*3.  Appellate Counsel's failure to challenge the sufficiency of the evidence:*

Petitioner also argues that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence supporting his convictions of conspiracy, aggravated kidnapping, and aggravated robbery.

Contrary to petitioner's assertion, petitioner's counsel did argue that there was insufficient evidence as to the charges of aggravated kidnapping and aggravated robbery. Counsel raised the issue and presented his arguments in an objectively reasonable manner; the state appellate court, however, was not persuaded.  *See Valdez*, 266 Kan. at 784-87.

With respect to the conspiracy charge, appellate counsel did not challenge the sufficiency of the evidence related to this charge.  However, the Kansas Court of Appeals determined in petitioner's collateral appeal that sufficient evidence existed from which reasonable minds could find petitioner guilty of conspiracy to commit first-degree murder beyond a reasonable doubt. *Valdez v. State*, No. 88,728, slip op. at 6 (Kan. Ct. App. July 3, 2003) (unpublished opinion). Due to the court's finding, petitioner has not established an ineffective assistance of counsel claim because he has not demonstrated that counsel's failure to challenge the sufficiency of the evidence for the conspiracy charge fell below an objective standard of reasonableness.  For this reason, the court denies petitioner's claim.

*4.  Appellate Counsel's failure to challenge petitioner's conspiracy convictions:*

Last, petitioner argues that his appellate counsel was ineffective for failing to raise the issue of multiplicity.

Petitioner's claim with respect to the conspiracy charge is moot because the Kansas Court of Appeals ruled in petitioner's favor on this issue, finding that his convictions for

conspiracy to commit first-degree murder and conspiracy to commit aggravated kidnapping were multiplicitous. *Valdez v. State*, No. 88,728, slip op. at 13 (Kan. Ct. App. July 3, 2003).  In the opinion, the court reversed petitioner's conviction for conspiracy to commit aggravated kidnapping. *Id.*

With respect to petitioner's claim for aggravated kidnapping and first-degree murder, according to Kansas law, murder and aggravated kidnapping are not multiplicitous charges.  The court finds that it was not objectively unreasonable for petitioner's counsel to decline to raise this issue on appeal because it was foreclosed by state case law. *State v. Grissom*, 251 Kan. 851, 901-02 (1992).

*J.  Whether the complaint charging petitioner was constitutionally defective?*

Petitioner claims that the complaint charging him with conspiracy to commit aggravated kidnapping and conspiracy to commit murder in the first degree is defective because it failed to allege an essential element of the crime.  However, petitioner's claim with respect to the conspiracy to commit kidnapping charge is moot because his conviction on that charge was reversed in *Valdez v. State*, No. 88,728, slip op. at 13 (Kan. Ct. App. July 3, 2003).

The adequacy of a state criminal complaint or indictment presents mainly a question of state rather than federal law. *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999).  Federal habeas relief may be granted to a state prisoner "only if state court error resulted in the deprivation of fundamental rights guaranteed by the United States Constitution." *Id.*  "A charging document may violate the Sixth Amendment by failing to provide a defendant with adequate notice of the nature and cause of the accusation filed against him." *Id.*

17

After a review of the record, the court finds that petitioner received notice of the charge against him and had sufficient information to prepare a defense.  Furthermore, the evidence presented at trial established the grounds for instructing the jury on the overt act.  The jury instructions reflected the presented evidence.  The court finds that a material change in the charge or facts alleged in the charging document did not change and therefore, federal habeas relief is not warranted.

Furthermore, in addressing this claim on appeal, the Kansas Court of Appeals found that petitioner failed to demonstrate prejudice that would necessitate a reversal based on a defective complaint.  *Valdez v. State*, No. 88,728, slip op. at 17 (Kan. Ct. App. July 3, 2003) (unpublished opinion).  This decision was reasonable and was neither contrary to nor an unreasonable application of, United States Supreme Court precedent.  Thus, petitioner has failed to demonstrate a basis for federal habeas relief.

### K.  Whether petitioner was convicted through the use of perjured testimony?

Petitioner contends that his conviction stemmed from the use of perjured testimony of Jose Avalos, Bill Dianda, and Carlos Valencia.

The knowing use of perjured testimony by the state against a defendant to obtain a conviction is a denial of the Fourteenth Amendment's due process guarantee.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  In order to demonstrate a violation, "a defendant must show: (1) that the testimony was false, (2) that it was material, and (3) that it was knowingly and intentionally used by the government to obtain a conviction."  *United States v. Wolny*, 133 F.3d 758, 762 (10th Cir. 1998).  "Contradiction and changes in a witness's testimony alone do not constitute

perjury and do not create an inference, let alone prove, that the prosecution knowingly presented perjured testimony." *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991).

*1. Testimony of Jose Avalos:*

Petitioner argues that throughout the proceedings, Avalos gave a total of five different stories that changed dramatically each time. However, the argument alone that the witness' testimony changed over the course of the trial, does not constitute perjury. *Id.* Petitioner fails to demonstrate the use of perjured testimony for Jose Avalos. *See Wolny*, 133 F.3d at 762.

*2. Testimony of Bill Dianda:*

With respect to Bill Dianda, petitioner alleges that the changes in Dianda's testimony and the admission by Dianda that he previously lied to the police is evidence that the prosecution knowingly used perjured testimony.

However, petitioner has not made a showing adequate to demonstrate the use of perjured testimony. Although the witness may have contradicted his own statements, contradictions and changes alone do not constitute an inference that the prosecution knowingly used perjured testimony. *Tapia*, 926 F.2d at 1563. In *Tapia*, the witness changed his testimony several times, however, the court found that "the jury heard all versions and both witnesses were thoroughly impeached. It was for the jury to decide which version to believe." *Id.* Furthermore, petitioner has not established that the testimony was indeed false, that it was material to the case and that the prosecution knowingly presented the perjured testimony. Accordingly, petitioner's claim on this issue is without merit.

*3.  Testimony of Carlos Valencia:*

Petitioner alleges that the prosecution made a secret deal with Valencia to give perjured testimony.  However, petitioner has not submitted or met the requirements to prove the use of perjured testimony under *Wolny*, including that Valencia's testimony was false, that it was material, and that the prosecution knowingly used perjured testimony.  *See Wolny*, 133 F.3d at 762.  For this reason, the court denies petitioner's claim with respect to Carlos Valencia's testimony.

*L.  Whether petitioner's additional allegations of prosecutorial misconduct merit relief?*

Separate from petitioner's previous claim of prosecutorial misconduct, petitioner also argues that the prosecution deprived him of his right to due process by withholding information regarding deals made by witnesses, co-defendants, accomplices, and their associates and for using known perjured testimony by witnesses, co-defendants, accomplices and their associates. Additionally, petitioner contends that the prosecutor committed misconduct in his closing arguments by referring to petitioner as "the devil" to the jury.

In federal habeas review for prosecutorial misconduct, the question to be considered is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  The appropriate standard of review for this claim is "the narrow one of due process, and not the broad exercise of supervisory power."  *Id.*  (quoting *Donnelly*, 416 U.S. at 642).

*1.  Petitioner's claims that the prosecution denied deals made with witnesses in exchange for perjured testimony:*

Petitioner cites that during the prosecutor's closing remarks, the prosecutor stated: "I don't like bringing in witnesses that I have to make deals with but that's part of life."  R. XIV, pg. 256.  Petitioner believes this statement demonstrates that the prosecutor used perjured testimony.

However, petitioner does not allege additional supporting information to show that the prosecution encouraged or used perjured testimony.  Petitioner fails to meet the requirements set forth in *Darden*.  Petitioner only contends that the prosecution's closing remarks illustrate that the prosecution used perjured testimony.  For this reason, the court denies petitioner's appeal on this claim.

*2.  Prosecution's closing remarks:*

In the prosecution's closing argument, the prosecution stated:

> I wish when I had a murder case, I had people just like you as witnesses or I had boy scouts or girl scouts, FHA, FFA members but I don't.  It doesn't work that way.  So, sometimes, when you prosecute the devil, you have to go to hell for the witnesses and that's what we have to do, okay?  I don't like bringing in witnesses that I have to make deals with but that's part of life.

R. XIV, pg. 256.  Petitioner argues that this comment was prejudicial.

After a review of the record, the court notes that the comment was made within the bounds of a closing argument, in response to defense counsel's argument against the credibility of the prosecution's witnesses.  The comments did not render the trial fundamentally unfair and therefore does not warrant federal habeas relief.

*M.  Whether petitioner's trial counsel was ineffective for failing to investigate plea agreements and the alleged perjured statements of Avalos, Dianda, and Valencia?*

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  *Strickland v. Washington*, 466 U.S. 668, 691 (1984).  Here, the record shows that counsel did in fact investigate particular witnesses.  For instance, petitioner's counsel cross-examined Avalos, Dianda, and Valencia about their statements at trial, previous statements that they had made, their prior criminal history, and any deals made in exchange for their testimony.  R. XI, pp. 82-103; R. XII, pp. 64-95, 103-05, 118-37.  The court holds that petitioner has failed to demonstrate that counsel acted in an objectively unreasonable manner in not investigating witnesses.  Additionally, petitioner has not demonstrated that he was prejudiced in any manner by counsel's actions.  Therefore, petitioner has not met the requirements of *Strickland*.

*N.  Whether petitioner's appellate counsel was ineffective for failing to argue on appeal the prosecution's known use of perjured testimony?*

Finally, petitioner argues that he received ineffective counsel because counsel failed to raise, brief, and argue on direct appeal the prosecution's known use of perjured testimony that prejudiced petitioner's rights.

However, this court previously found that although witnesses gave conflicting statements at different times, petitioner has not proven the elements of perjured testimony.  Therefore, an effort to raise this claim on appeal would have resulted in a frivolous claim.  Plaintiff has failed to prove the elements required under *Strickland* to demonstrate that he received ineffective

assistance of counsel, namely, that counsel acted in an objectively unreasonable manner which then prejudiced petitioner.  The court denies petitioner's appeal on this claim.

IT IS ACCORDINGLY ORDERED this 31st day of May, 2007, that petitioner's motion (Dkt. No. 1) is denied.

<u>s/ J. Thomas Marten</u>
J. THOMAS MARTEN, JUDGE